**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**REGENCY CENTERS CORPORATION**,

      Plaintiff,

vs.                                                    Case No. 3:24-cv-00428-WWB-PDB

**INDIAN HARBOR INSURANCE
COMPANY**,

      Defendant.

_____/

**PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, OR
ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure ("Rule(s)"),

and Rule 3.01(a) of the Local Rules, United States District Court, Middle District of Florida,

Plaintiff, Regency Centers Corporation ("Plaintiff" or "Regency Centers"), moves for

partial judgment on the pleadings, or alternatively, for partial summary judgment (the

"Motion"). Regency Centers is entitled to partial judgment because the parties agree on

the existence and language of the environmental insurance policy (the "Policy")[1] and the

exclusion provision at issue in this action, which simply require interpretation by this

Court. This entire lawsuit is about the interpretation of Endorsement #036 of the

Defendant-drafted Policy, which Defendant is wrongly relying upon to deny coverage.

Further, the interpretation of such language, when using the applicable canons of

---

[1] The Policy is attached to the Complaint as Exhibit A (D.E. 1, Compl. ¶ 8, Ex. A), and also to the Answer as Exhibit A (D.E. 23, Ans. ¶ 8, Ex. A). Although Indian Harbor avers that the Complaint copy was incomplete as to certain documents, it agreed that the coverage and exclusion language "correctly" identify the respective terms. *Id*. at ¶¶ 12, 21. As a result, the Policy language at issue is undisputed.

construction, is either that (1) the plain language of the exclusion does not apply and Regency Centers is entitled to coverage under the Policy, or (2) the language of the exclusion is at best ambiguous, which under the applicable case law regarding the interpretation of insurance policies, also requires a finding of coverage in favor of the insured, Regency Centers.[2] Simply stated, the exclusion at issue either by its plain language does not apply to Regency Centers' claim so that coverage exists under the Policy, or the exclusion language is ambiguous, which under the binding case law requires a determination that the exclusion be interpreted in favor of the insured, Regency Centers. In either instance, Regency Centers, as the insured, is entitled to judgment that its claim is covered by the Policy and not barred by the exclusion as argued by Defendant.[3]

## **BACKGROUND**

This action arises from Defendant's wrongful denial of coverage under the Policy following Regency Centers' discovery of certain pollutants at its shopping center in Blossom Valley, California, (D.E. 1, Compl., ¶¶ 8–35, 38-46, 47-50).  Specifically, on December 28, 2022, Regency Centers made a claim on the Policy for pollution loss , after discovering Tethrachloroethene and other solvents beneath the existing shopping center

---

[2] By this Motion for "Partial" Judgment, Regency Centers asks the Court just to determine that its claim, as defined in the Background section of this Motion, is covered by the Policy and that Defendant's denial of the Claim was a breach. It does not ask the Court at this time to determine the amount of damages, interest and fees payable under the Policy.

[3] This Motion addresses many of the same legal issues briefed with regard to Defendant's Motion for Judgment on the Pleadings (D.E. 29, Def. IH's Mot. J. on the Pldings.; D.E. 34, Pl.'s Rspns. in Opp. to Mot. J. on the Pldings.)

(the "Claim").[4] *Id.* at ¶ 13, Ex. B. Defendant admits receipt of the Claim and agrees that the language in the Claim "speaks for itself". (D.E. 23, Ans. ¶ 13.) As stated in the Claim, Regency Centers discovered these substances when, at a tenant's request, it tested the existing adjoining shopping center space that had previously been operated as a dry cleaner to ensure the space was safe for the tenant to expand its current store into this adjoining space. (D.E. 1, Compl. ¶¶ 13-17, Ex. B.) Defendant denied the Claim by letters identified in the Complaint as Exhibits C and D, which Defendant again admits and states "speak for themselves". (D.E. 23, Ans. ¶¶ 18, 19.) These letters, Defendant's discovery responses, and the statements of its counsel in a discovery hearing before Magistrate Judge Barksdale, identify that Defendant has denied coverage and the Claim solely based on the Policy's Site Development and Construction Activities Exclusion ("Endorsement #036" or the "Exclusion"),[5] which provides:

[*Policy language follows on the next page*]

---

[4] The Claim is more specifically identified in paragraph 13 of the Complaint and attached thereto as Exhibit B. (D.E. 1, Compl. ¶ 13, Ex. B).

[5] See Supplemental Interrogatory Answer No. 3. (D.E. 35, Def. IH's Opp. to Pl. Regency's Mot. to Compel, Ex. B.) Further Defendant conceded that its only basis for denial of the Claim was Endorsement #036 during the hearing on *Plaintiff's Motion to Compel Proper Responses to Plaintiff's First Requests for Production and Interrogatories* (D.E. 30, Mot. to Compel) held on November 4, 2024 (the "Motion to Compel Hearing"). (D.E. 41, Transc. Hearing on Mot. to Compel, Nov. 4, 2024, 55:5-8 ("We've tried to say, as clearly as we can, that our coverage position only involves the exclusion within endorsement 36. That's it.")).

ENDORSEMENT #036

This endorsement, effective 12:01 a.m., October 1, 2021, forms a part of

Policy No. PEC004659102 issued to REGENCY CENTERS CORPORATION

by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SITE DEVELOPMENT AND CONSTRUCTION ACTIVITIES EXCLUSION – BLANKET POLLUTANTS IN DISCLOSED DOCUMENTS

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

It is agreed that this Policy is amended as follows:

SECTION IV - EXCLUSIONS, is amended to include the following:

**Site Development and Construction Activities**
any site development or construction activities, including but not limited to:

1.    geotechnical or any other site investigations performed in preparation for any site development or construction;

2.    site grading;

3.    razing and/or construction of any structures;

4.    removal and/or disposal of any soil or other debris; or

5.    dewatering.

This exclusion applies to any **Pollutants**, including any breakdown daughter or derivative products of such **Pollutants**, described in the documents listed in the Known Circumstances or Conditions Exclusion Amendment & Disclosed Document Schedule endorsed onto this Policy, in or affecting all Media where such **Pollutants** is on, at, under or migrating from any location listed in the Your Location(s) Schedule endorsed onto this Policy.

This exclusion does not apply to any **Bodily Injury**, **Property Damage**, **Legal Expense** associated with **Bodily Injury** or **Property Damage** and coverage afforded under SECTION II – SUPPLEMENTAL COVERAGES.

All other terms and conditions remain the same.

*Id.* at ¶ 8, Ex. A. In essence, Defendant has taken the position that the Claim is excluded from coverage because it contends that the testing done was part of site development and construction activities notwithstanding (a) the Claim language to the contrary and (b) the uncontroverted fact that the shopping center and the tenant space being tested were already built. *Id.* at ¶¶ 18-20, Exs. B, C and Comp. D.

After unsuccessful attempts to have Defendant recognize that the Exclusion applies only to testing done in conjunction with planned site development and construction work involving the soils at the site -- as Endorsement #036's plain language

4

and enumerated sample activities make clear -- and does not apply here where Regency Centers discovered the substances when testing at the request of a tenant to determine the safety of existing space, Regency Centers filed this lawsuit. *Id.*

**<u>The Standard for Granting Judgment on the Pleadings and/or Summary Judgment</u>**

Judgment on the pleadings may be entered where there is no disagreement regarding the documents identified in the pleadings that require judicial interpretation -- here the Policy and the Exclusion. *See Bank of Camilla v. St. Paul Mercury Ins. Co.*, 531 F. App'x 993, 994 (11th Cir. 2013) (courts "may also consider documents attached to the plaintiff's complaint if they are (1) central to the plaintiff's claim and (2) undisputed."); *see also U.S. Sugar Corp. v. Commerce and Industry Ins. Co.*, 644 F.Supp.3d 1057, 1066 (S.D. Fla. 2022) (entering partial judgment on the pleadings in favor of insured based on interpretation of undisputed insurance policy language); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (applying to Rule 12(c) cases the rule that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is (1) central to the plaintiff's claim; and (2) undisputed"). Thus, just as Defendant has moved for judgment on the pleadings and asked the Court to interpret the policy and exclusion to deny coverage, Regency Centers asks the Court to do much the same as to the policy language and exclusion at issue herein, but to confirm coverage.

In addition, and because Defendant has raised various affirmative defenses in its Answer that could potentially involve fact issues, but as discussed *infra*, do not on this record, the courts may convert or treat the motion as one for summary judgment. *U.S. Sugar Corp.*, 644 F. Supp. 3d at 1064, n.4 (noting that the court "could convert the motion

5

for judgment on the pleadings into a partial motion for summary judgment"); *Baez v. LTD Financial Servs., L.P.,* 757 Fed.Appx. 842, 845 (11th Cir. 2018) (holding that district court properly converted debt collector's motion for judgment on the pleadings into a motion for summary judgment, where motion required the district court to look outside the pleadings). As the Court noted in *U.S. Sugar Corp.*, like here, where the claim involved undisputed insurance policy language and potential matters outside the pleadings, whether the determination was made on motion for judgment on the pleadings or on a motion for summary judgment, the court would "arrive at the same result . . . because neither party dispute[d] the Policy's authenticity and the Court [wa]s only deciding what the Policy mean[t] as a matter of law, no additional evidence [wa]s necessary for the Court to definitively interpret the Policy." *U.S. Sugar Corp.*, 644 F. Supp. 3d at 1064, n.4.

## ARGUMENT

### I.    REGENCY CENTERS IS ENTITLED TO A PARTIAL JUDGMENT BECAUSE THE PLAIN LANGUAGE OF THE EXCLUSION DOES NOT BAR THE CLAIM.

This case and Motion involve the interpretation of an insurance policy, which interpretation involves both traditional canons of construction as well as established case law that identify special rules of construction for interpreting insurance policies.  Primary amongst these special rules for interpreting insurance policies is that courts are to construe insuring or coverage clauses in the broadest manner possible in favor of the insured to give effect to the greatest extent of coverage.  See, e.g., *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997) (collecting cases) ("Florida law is equally well-settled that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage").

6

In fact, "[w]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Depositors Ins. Co. v. WTA Tour, Inc.*, 576 F. Supp. 3d 1066, 1073 (M.D. Fla. 2021) (citing *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574 (Fla. 1st DCA 2010)). Further, when provisions of a policy are subject to two or more reasonable interpretations, i.e., "ambiguous," the Court is to construe the provision "strictly against the insurer that drafted the policy and liberally in favor of the insured." *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005); see also *Depositors Ins. Co.*, 576 F. Supp. 3d at 1073 ("insurance policies are 'ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured.'") (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)), *Penzer v. Transportation Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). "[A]mbiguous 'exclusionary clauses are construed even more strictly against the insurer than coverage clauses.'" *Id.* (citations omitted).

Indeed, the Florida Supreme Court has clearly held that ambiguities in an insurance policy or exclusion are automatically construed in favor of the insured -- meaning judgment is to be entered for the insured -- even without resort to extrinsic evidence to clarify the parties' intent. *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 951 (Fla. 2013) (where an insurance policy is "drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public." *Id.* (quoting *Hartnett v. S. Ins. Co.,* 181 So. 2d 524, 528 (Fla. 1965). "Thus where, as here, one reasonable interpretation of the policy

7

provisions would provide coverage, that is the construction which must be adopted." *Id.* at 950.

Simply said, under the special and well-settled law for interpretation of insurance policies and exclusions, where the language or the policy or exclusion create issues as to its interpretation, the courts are to interpret the provisions in favor of the insured and find coverage -- end of story/end of case. *See Gov. Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1115 (Fla. 2017) (holding that "because there are multiple reasonable interpretations [of the subject policy language], the provision is ambiguous and must be construed in favor of coverage."); *see also Washington Nat'l Ins. Corp.*, 117 So. 3d at 950-52; *Fayad*, 899 So. 2d at 1086; *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.,* 331 F. App'x 640, 645-46, 648 (11th Cir. 2009) (affirming district court's construing policy language in favor of coverage for the insured and against insurer because it was ambiguous).

In addition to these special rules for interpreting insurance policies, several fundamental principles of contract interpretation also apply to this Motion and the interpretation of the Policy and the Exclusion.  These include that the court is to read the terms of a provision together, to give each term meaning and effect. *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) ("In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its full meaning and operative effect.") (quotation omitted); *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 385 (Fla. 5th DCA 2005). Also, when there is a parallel construction of words used in a series, prepositive and postpositive modifiers typically apply to all the words in the series.  *ECB USA, Inc. v. Chubb Ins. Co.*

8

*of New Jersey*, 113 F.4th 1312, 1322 (11th Cir. 2024) (citing Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts 147* (2012)). Still further, the policy and exclusion must be interpreted using the principle of *ejusdem generis,* which means of the same kind and provides that where general words are used with an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned. *See Arnold v. Shumpert*, 217 So. 2d 116, 119 (Fla.1968).

The language of the Exclusion, given a reasonable reading and applying the foregoing rules for insurance policy and contract interpretation, establishes that the Exclusion language applies only to "site" development and construction activities, meaning "site" activities that involve improving the land or soil in anticipation of vertical construction, such as grading, foundation work, sewer connections, and the like. This is because the prefatory term "site" modifies each subsequent term in the phrase "site development or construction activities." Thus, "construction activities" must be read as modified and limited by the preceding word "site" so that its proper interpretation means "site. . . construction activities," and does not mean any and all "construction activities" as Defendant argues.

This properly focused reading of the Exclusion as limited to "site" development and construction activities is further supported by the fundamental principles of grammar explained by the "series-qualifier" canon. The "series-qualifier" canon provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *See ECB USA, Inc.*, 113 F.4th at 1322 (emphasis added). Here, "site" is the prepositive

9

modifier for both "development" and "construction", which are parallel terms. Relatedly, if Indian Harbor had intended when drafting the Exclusion to broadly include any and all "construction" activities, as opposed to the more limited "site construction" activities, it should have used a comma to set apart the parallel terms in the phrase "site development, or construction activities" to identify each as separate and distinct activities. *Id.* at 1324-25. As the Court well knows, punctuation, including the use of commas, has meaning.

In addition, such interpretation is necessary and correct because to do otherwise would result in the words "site development" having no meaning or effect. This is because if the modifier "site" is not applied to "construction activities" there would be no need or reason to include the words "site development" because "site development" describes a subset of activities subsumed in the all-encompassing general term "construction activities." *See State Farm Fire & Cas. Co.*, 393 F.3d at 1230; *Whitley*, 910 So. 2d 381 at 385. Thus, if Defendant was correct that "construction activities" should be interpreted separately to include any and all construction, then the parallel term "site development" would have no meaning or effect, which cannot be true. *Id.* If Defendant meant for the Exclusion to cover any and all construction activities, it could have, and *should* have, when drafting the language, only included the all-encompassing term "construction activities," without the narrower term "site development," which would then be wholly unnecessary and superfluous. Defendant should not now, after the application of hindsight, benefit from its own drafting error.

Finally, had Defendant intended for the Exclusion to be interpreted to include all manner of construction activities, it should have not limited its examples to site related activities. When Defendant drafted the language of this Exclusion, however, it included a

list of examples of the type of activities that were meant to be covered by the Exclusion, which examples, under the principle of *ejusdem generis*, inform the meaning of the preceding phrase "site construction or construction activity," as pertaining to the site, i.e., the land or soil, as opposed to all construction activities generally. *See State Farm Fire & Cas. Co.*, 393 F.3d at 1230 ("In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its full meaning and operative effect.") (quotation omitted); *Whitley*, 910 So. 2d at 385. Indeed, the Exclusion examples only involve the following type of site related work: (1) "geotechnical or any other site investigations in preparation for site development or construction"; (2) "site grading"; (3) "razing and/or construction of any structures"; (4) "removal and/or disposal of any soil or other debris"; and (5) "dewatering".[6]

Thus, the language of the Exclusion, when given a reasonable reading and applying the rules of insurance policy and contract interpretation, establishes that it applies only to a limited subset of construction activities that involve improving the land or soil in anticipation of vertical construction, such as grading, foundation work, sewer connections, and the like. The Claim submitted by Regency Centers, however, does not identify testing done for any planned or contemplated "site construction or construction activity," but instead identifies safety testing of an <u>existing building</u> for a tenant who was

---

[6] Although Defendant may argue that the third example, "razing and/or construction of any structures" does not directly identify "site" activities, this phrase too must be construed while considering its surrounding terms, which all plainly involve "site" activities. Thus, the third example refers to razing or construction activities related to foundations, sewer lines, and other groundwork – not vertical construction.  And in any event, even the interior remodeling activities that Defendant improperly assumes would be necessary for the tenant's contemplated expansion would not qualify as construction of *structures*. (D.E. 29, Def. IH's Mot. Judg. on Pleadings, generally).

considering leasing the existing adjacent premises.  (D.E. 1, Compl. ¶¶ 15, 16, Ex. A, Policy).

With this correct interpretation, Regency Centers is entitled to partial judgment in its favor, having shown that it is entitled to coverage under the Policy and that Defendant breached the Policy by denying the Claim.

**II.  ALTERNATIVELY, IF THE COURT DETERMINES THAT THE MEANING OF THE EXCLUSION IS NOT PLAIN BUT INSTEAD AMBIGUOUS, REGENCY CENTERS, AS THE INSURED, IS STILL ENTITLED TO PARTIAL JUDGMENT UNDER THE SPECIAL RULES FOR INTERPRETING INSURANCE POLICIES.**

Should this Court determine that the language of the Exclusion is ambiguous -- i.e. subject to two or more reasonable interpretations -- Regency Centers nonetheless remains entitled to a partial judgment finding coverage under the special rules for interpreting insurance policies in favor of the insured. This is because the law is well settled in Florida that when an insurance policy is ambiguous, the Court is to construe the provision "strictly against the insurer that drafted the policy and liberally in favor of the insured." *Fayad*, 899 So. 2d at 1086 (Fla. 2005); *see also U.S. Sugar Corp.*, 644 F. Supp. 3d at 1066; *Gov. Emps. Ins. Co.*, 228 So. 3d at 1115 (granting judgment in the insured's favor and requiring coverage where insurance policy language was ambiguous); *Washington Nat'l Ins. Corp.*, 117 So. 3d at 950-52; *Ernie Haire Ford, Inc.,* 331 F. App'x 640 at 648; *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 35-36 (Fla. 2000) (finding that "because the limitation of liability clause [of insurance policy] is susceptible to differing interpretations, that clause is ambiguous [and t]herefore, [the court is] . . . obligat[ed] to construe ambiguity against the drafter and in favor of the insured.").

Indeed, counsel for Defendant has already conceded Regency Centers' entitlement to judgment should this Court find the Policy's language ambiguous. At the Motion to Compel Hearing, when arguing that Regency Centers was not entitled to its discovery seeking information and documents regarding Defendant's intent, internal interpretation and prior use of the Exclusion, Defendant's counsel argued that such discovery was unnecessary *because if the Court found the Exclusion to be ambiguous, Defendant loses*, stating: "But in general. Your Honor. I agree that if the language is clear. Judge Berger says, 'Insured, you win,' or 'Insured, you win,' and we're done. Or Judge Berger says. 'I can't tell. It's ambiguous.' And generally speaking, that would inure against my client, and the tie goes to Mr. Tucker's client, again, without . . . resorting to extrinsic evidence." (D.E. 41, Transc. Hearing on Mot. to Compel, Nov. 4, 2024, 44:16-20). Further, in support of its argument that such discovery was unnecessary, Defendant's counsel cited to and relied upon *Shiloh Christian Center v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 631 (11th Cir. 2023) and *Safeco Ins. Co. of Am. v. Weissman,* Case No. 17-62032-CIV, 2018 WL 7046634, *4 (S.D. Fla. Sept. 5, 2018), which both stand for the proposition that a determination of ambiguity results in judgment against the insurer and in favor of the insured without the need for additional proceedings. (D.E. 35, Def. IH's Opp. to Pl. Regency's Mot. to Compel, p. 10). *See Shiloh Christian*, 65 F.4th at 631 ("Because . . . 'there are multiple reasonable interpretations' regarding whether the . . . Policy covers named windstorms, the policy 'is ambiguous and must be construed in favor of coverage."); *Safeco Ins. Co. of Am.*, 2018 WL at *3 (noting that "Florida law requires such [ambiguous] policies to be construed against the insurer.").

13

Thus, should this Court determine that the Exclusion is ambiguous as to whether the Claim is covered, this Court must enter partial judgment in favor of Regency Centers without resort to further evidence.  *Fayad*, 899 So. 2d at 1085-86; *Ruderman*, 117 So. 3d at 945; *see also U.S. Sugar Corp.*, 644 F. Supp. 3d at 1066 ("the Court observes that if the Policy's terms were to be found ambiguous, Florida law would still require [the insurer] . . . to have provided coverage for [the insured] . . . in the underlying lawsuit.  Ambiguities in insurance contracts are interpreted against the insurer.  [Also] . . . , 'any doubt regarding the duty to defend must be resolved in favor of the insured.'"). [7]

### III.    PARTIAL JUDGMENT IS ALSO APPROPRIATE AS TO MANY OF DEFENDANT'S AFFIRMATIVE DEFENSES.

---

[7] Magistrate Judge Barksdale noted at the Motion to Compel Hearing that the discovery was not needed if the Exclusion was unambiguous, and if the Court found the Exclusion to be ambiguous, because Regency Centers would win, making the discovery unnecessary. (D.E. 41, Transc. Hearing on Mot. to Compel, Nov. 4, 2024, 29:18:-30:1 ("And the only thing Judge Berger can consider are the pleadings. That's all she can consider for that – purposes of that motion. And if she grants the motion, we're done, and none of this has to be decided . . . If you say – if she says it's ambiguous, then you win, period.")). While Regency Centers agrees with the foregoing conclusions, Regency Centers contends that it nonetheless is entitled to the requested discovery to try alternatively to establish *a latent ambiguity*, meaning the Exclusion is "rendered ambiguous by some collateral matter." *Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC*, 915 So. 2d 657, 658 (Fla. 2d DCA 2005) (citation omitted).  Indeed, the very nature of latent ambiguity requires discovery to be unearthed and thus the potential for latent ambiguity need not be pleaded. *Pacific Tech Const., Inc. v. Sauer, Inc.*, Case No. 3:18-cv-170-J-34JRK, 2018 WL 4501738, *5 (M.D. Fla. Sept. 20, 2018) (noting that a plaintiff was not required "to plead facts showing a latent ambiguity" as such would "run[] against the well-recognized rule that 'a plaintiff is not required to anticipate and negate an affirmative defense in the complaint.'").  Thus, if this Court denies Regency Centers' Motion, it should also deny Defendant's Motion for Judgment on the Pleadings until Regency Centers has been provided the requested discovery to determine if this discovery establishes a latent ambiguity (which the Magistrate Judge deferred pending this Court's decision on Defendant's motion (D.E. 37, Order ("The plaintiff may renew the motion to compel if warranted by a decision on the motion for judgment on the pleadings, Doc. 29.")).

In its Answer, Defendant raised the typical laundry list of affirmative defenses. In response, Regency Centers served discovery to determine the factual basis, if any, for these alleged defenses. The defenses included the First (Failure to State a Claim), Second (Site Development and Construction Activities Exclusion), Third (Laches, Unclean Hands, Waiver and Estoppel), Eighth (Notice), Ninth (Other Insurance or Others Responsible), Tenth (Failure to Mitigate), Fifteenth (Condition Precedent), Sixteenth (Dry Cleaner Fund), and Seventeenth (Reservation of Rights). In response to Regency Centers' discovery, Defendant provided no real response, forming the basis in part for Regency Centers' Motion to Compel (D.E. 30, Pl. Regency's Mot. to Compel). At the Motion to Compel Hearing, Defendant's counsel represented to the Court that it had no facts or evidence related to these defenses, which were raised solely in an abundance of caution. (D.E. 41, Transc. Hearing on Mot. to Compel, Nov. 4, 2024, 58:5-10 "THE COURT: As of now you just put in every possible affirmative defense without knowing if it really will apply. But if you discover some information where it will apply, you'll provide that. MR. COHEN: I'd like to think we were a little bit more targeted than that. but -- but yes."). Regency Centers is therefore also entitled to summary judgment on these defenses.[8]

_____

[8] Defendant raised other alleged defenses that, in fact, are not defenses but instead just involve other Policy requirements that are not at issue herein such as the Fourth (Amounts Within Retention, meaning the coverage is subject to the deductible), Fifth (Amounts Exceeding Limits of Liability meaning the coverage is subject to the policy limits), Sixth (Amounts Uninsurable Under Applicable Law, meaning the Policy's coverage does not cover other losses not at issue herein), Seventh (Amounts Not Constituting Pollution Loss, also meaning the Policy's coverage only extends to pollution losses, again not at issue herein), Eleventh (Costs Prior to Notice, meaning the claimed damages must be determined), Twelfth (Unreasonable Costs, meaning the claimed damages must be reasonable), Thirteenth (Amounts Not Rendered Fixed Or Certain, meaning the losses still must be determined), and Fourteenth (Attorney's Fees, arguing there is no right to

## CONCLUSION

WHEREFORE, Regency Centers respectfully moves this Court to grant Partial Judgment on the Pleadings and/or Partial Summary Judgment by entering an Order declaring that its Claim is covered under the Policy and not barred by the Exclusion or the above referenced affirmative defenses, and that Defendant's denial of such Claim is a breach of the Policy. The Parties can then address the remaining affirmative defenses and issues of damages, interest, attorneys' fees as may be necessary.

Dated this 29th day of January 2025.

/s/ **John A. Tucker**
John A. Tucker
FL Bar No. 0356123
Emily Friend Horner
FL Bar No. 73042
John "JD" Fox
FL Bar No. 1019551
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
Telephone:  904.359.2000
Facsimile:  904.359.8700
Primary Email: jtucker@foley.com
Secondary Email: avwilliams@foley.com
Primary Email: ehorner@foley.com
Secondary Email: bshelley@foley.com
Primary Email: jfox@foley.com
Secondary Email: avwilliams@foley.com

*Attorneys for Plaintiff, Regency Centers Corporation*

---

fees). Regency Centers anticipates dealing with these "defenses" after entry of the partial judgment either by agreement of the parties or adjudication by the Court.

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 29, 2025, a copy of the foregoing was electronically filed via CM/ECF, which will effect service on all counsel of record.

/s/ ***John A. Tucker***
Attorney