**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO. 3:24-cv-00428-WWB-PDB**

REGENCY CENTERS CORPORATION,

     Plaintiff,

v.

INDIAN HARBOR INSURANCE COMPANY,

     Defendant.

_____/

**INDIAN HARBOR INSURANCE COMPANY'S**
**OPPOSITION TO PLAINTIFF REGENCY'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**

Defendant Indian Harbor Insurance Company ("IH"), hereby files this Opposition to Plaintiff Regency Centers Corporation's ("RCC") Motion for Judgment on the Pleadings, Or Alternatively, For Partial Summary Judgment ("RCC's Motion").

This is a simple insurance coverage dispute centered on the application of one unambiguous policy exclusion precluding environmental liability coverage for any claim "directly or indirectly based upon or arising out of . . . any site development or construction activities" (the "Site Development and Construction Activities Exclusion" or the "Exclusion"). Based on the plain language of the Exclusion, IH denied coverage for the underlying claim tendered by RCC under Environmental Real Estate Portfolio Policy No. PEC004659102 (the "Policy") for remediation expenses incurred in connection with a planned construction project to expand a CVS store located at RCC's Blossom Valley

Shopping Center ("Blossom Valley"). The parties now _agree that this matter is ripe for adjudication on the pleadings_ but take sharply diverging paths to arrive at that conclusion.

IH, throughout this litigation as well as the life of the underlying claim, has maintained one single straightforward position. Based on a plain and commonsense reading of the Policy language as applied to the undisputed facts (reported by RCC itself), IH has consistently maintained that coverage is not available for the pollution at the site because the claim is "based upon or arising out of … _any_ site development or construction activities, including but not limited to … _any_ … site investigations performed in preparation for _any_ site development or construction" as explicitly excluded by the Policy issued by IH (emphases added).  IH has never wavered from this position.

In contrast, RCC continues to argue its case on constantly shifting sands, jumping from theory to theory in a frenzied effort to find any foothold. Under RCC's newest theory, RCC now posits that the matter is ripe for judgment on the pleadings, but its newest substantive argument is no better than its previous several attempts. Indeed, the argument is stitched together with threads of nonsensical propositions. In short, to agree with RCC would require this Court to insert words into the Policy where they do not appear, imagine commas that are unnecessary, and blind itself to the nature and context of the work that RCC planned to perform at Blossom Valley. In total, RCC's counterfactual narrative and torturing of the plain Policy text presents an illogical and unreasonable interpretation of the Policy language that this Court must reject.

Because the Exclusion unambiguously applies to bar coverage for RCC's claim, this Court should deny RCC's Motion and grant IH's cross-motion for judgment on the pleadings (D.E. 29).

## I.      BACKGROUND

### A.      The Underlying Site Investigation and Denial of Coverage

In late 2021, RCC, a shopping mall landlord with hundreds of commercial properties, was engaged in lease negotiations with CVS, an existing tenant at the Blossom Valley strip mall "*related to CVS' interest in expanding its leased storefront space into an adjacent vacant storefront space*." D.E. 1, Compl. ¶ 15 (emphasis added); D.E. 1, Compl., Ex. B. Because CVS was aware that the adjacent space had previously been used as a drycleaning business, it requested that RCC "provide confirmation that conditions in the space would not pose an environmental risk to human health." D.E. 1, Compl. ¶ 16; D.E. 1, Compl., Ex. B. Thus, to facilitate the proposed CVS expansion, RCC performed site investigation work by installing "two temporary ground water sampling points in the vicinity of the Vacant storefront in question" that revealed the presence of PERC/PCE. D.E. 1, Compl., Ex. B; D.E. 1, Compl. ¶ 17.

After conducting further testing (which also revealed the presence of TCE), RCC reported the existence of the contaminants at Blossom Valley to IH on December 28, 2022, over a year after they were first discovered. D.E. 1, Compl., Ex. B. Following its review of the materials submitted by RCC, IH wrote to inform RCC that coverage was precluded because the Exclusion applied to bar coverage. D.E. 1, Compl., Ex. C. The Exclusion, in relevant part, excludes coverage for "any **Claim, Pollution Loss, Emergency Remediation Expense** . . . directly or indirectly based upon or arising out of:

> any site development or construction activities, including but not limited to:
>
> **1.**      geotechnical or any other site investigations performed in preparation for any site development or construction;

3

80275166;1

**2.**    site grading;

**3.**    razing and/or construction of any structures;

**4.**    removal and/or disposal of any soil or other debris; or

**5.**    dewatering.

D.E. 23-1, Policy, Section IV. as amended by Endorsement 36, at 38, 254 (highlighting added for Court's convenience and relevance). The Exclusion applies to any **Pollutants** at Blossom Valley listed in the Disclosed Document Schedule of Endorsement 32. *Id.*

As IH explained in its correspondence, the Exclusion applied to the investigatory sampling work that RCC performed at Blossom Valley because that work was "performed in preparation for CVS' potential expansion into the vacant storefront space[.]" D.E. 1, Compl., Ex. C, at 3. Although IH clearly explained that it was denying coverage solely under the Exclusion, IH explained that the Exclusion necessarily cross-references Endorsement 32 of the Policy to determine which particular **Pollutants** are noted in the "documents listed" therein with regard to Blossom Valley and thus are subject to the Exclusion. Endorsement 32 lists over 900 then-currently existing, active, and operating sites owned by RCC. D.E. 23-1, Policy, Endorsement 32, at 106-213. With respect to Blossom Valley, Endorsement 32 lists five documents that establish the universe of contaminants subject to the Exclusion, including PERC/PCE and TCE. *See* D.E. 23-1, Policy, Endorsement 32, at 136; D.E. 23-3, at 7; D.E. 24, at 59, 109.[1]

---

[1] RCC has acknowledged that both contaminants at issue were disclosed to IH through the above-referenced documents. *See* D.E. 1, Compl. ¶ 27.

4

**B.      This Lawsuit and RCC's Constantly Shifting Positions**

Following receipt of the denial correspondence, RCC's former broker, Robin Kelliher, wrote to IH on June 28, 2023 and raised three principal points on RCC's behalf: (1) no site development or construction activities were to take place because the request occurred during lease negotiations; (2) the Exclusion could not apply because CVS subsequently opted to not move forward with the expansion project, and (3) even if the expansion project moved forward, "tenant modifications" could not constitute site development or construction activities. D.E. 1, Compl., Ex. D, at 1-2. After IH wrote to inform RCC that these arguments did not alter the effect of the Exclusion and that it respectfully maintained its prior position, Kelliher wrote again to IH on September 6, 2023 to reiterate RCC's request for coverage. D.E. 1, Compl. Ex. D, at 4. Abandoning the prior arguments, Kelliher pivoted to asserting that coverage was owed because a state regulatory authority had requested a voluntary cleanup of the site, which RCC claimed had "nothing to do with" the initial site investigation work. *Id.*

After IH again wrote to explain that regulatory involvement would not alter the Exclusion's reach, RCC abruptly cancelled a meeting to discuss the Exclusion and filed this lawsuit. Venturing even further afield in its Complaint, RCC pled that IH used Endorsement 32 as an independent basis to deny coverage (it did not) and that Endorsement 33, a provision that IH never relied upon or even mentioned, effectively renders Endorsement 32 nugatory (it does not). D.E. 1, Compl. ¶¶ 24-33. In any event, to achieve an efficient resolution, IH moved for judgment on the pleadings on October 2, 2024, asserting once again that the plain terms of the Exclusion preclude coverage. D.E. 29. In its Opposition to IH's motion, RCC argued that the court could not resolve this case on the pleadings because, *inter alia*, (1) the pleadings established that the testing work

5

was done only for "safety" (despite pleading directly to the contrary); (2) the pleadings did not establish that any "site" construction work was to take place (despite pleading that the CVS intended to expand into a separate, vacant space); and (3) potential ambiguity in the policy language required additional discovery of underwriting intent. D.E. 34.

Now, in its own Motion, RCC argues that the Court *can* grant judgment on the pleadings, emphasizing what it believes to be dispositive rules of construction first trotted out in its Opposition to IH's motion: that the word "site" acts as "pre-positive modifier" that requires the Policy language to be read as "site development or [site] construction activities", a phrase which RCC narrowly defines as "activities that involve improving the land or soil in anticipation of vertical construction, such as grading, foundation work, sewer connections, and the like." D.E. 43, at 9-10. Based on its new arguments for a "series qualifier cannon", *id.*, the grammatical rules of "prepositive and postpositive modifiers", *id.* at 8, and its insertion of words that nowhere appear in the exclusion, RCC now argues that the sampling and planned expansion project were not "site construction activities" because they were not performed in anticipation of "vertical construction," which, according to RCC, is the only kind of construction or site development that the Policy excludes.  *Id.* at 5, 10-11.[2]

---

[2] In short, RCC has now trotted out at least **eight** different arguments as to why the Exclusion does not apply, and apparently dropped most of them, including (1) the contaminants were discovered during lease negotiations, (2) the expansion project did not go forward, (3) the expansion project would have only constituted "tenant modifications", (4) the clean-up costs were incurred due to the involvement of a regulatory body, (5) the environmental testing was done only for "safety", (6) the expansion work would not have constituted "site construction" because of "pre-positive modifiers", (7) the "or" between 'site development' and 'construction activities' should have been a comma and (8) the policy language is ambiguous. D.E. 1, Ex. D, at 1-2, 4; D.E. 34; D.E. 43.

6

## II.      ARGUMENT

RCC's desperate grammatical acrobatics, insertion of words that aren't in the Exclusion and counterfactual narrative do not prove any point in favor of coverage. If anything, the lengths RCC goes to advance its argument only accentuate the contrast with IH's interpretation, which relies only on the unambiguous, and purposefully broad, actual language of the Exclusion. RCC's attempts at complication fail. As the planned expansion of the CVS store plainly constituted "site development or construction activities," the unambiguous Policy language as applied to the uncontroverted facts establishes that coverage is precluded. RCC's motion should be denied and IH's cross-motion for judgment should be granted.

### A.      Legal Standard

"When a plaintiff moves for judgment on the pleadings, the court must consider the defendant's answer and treat any factual allegations denied by the defendant as false." *Oriental Republic of Uruguay v. Italba Corp.*, 606 F. Supp. 3d 1250, 1258 (S.D. Fla. 2022).[3] The Court "must make all inferences in favor of the nonmoving party," *Mimbs v. J.A. Cambece L. Off., P.C.*, No. 12-62200-CIV, 2013 WL 11982289, at *2 (S.D. Fla. July 31, 2013), and "view[s] those facts in the light most favorable to the non-moving party."

---

[3] Apparently, RCC believes that because IH "has raised various affirmative defenses in its Answer that could potentially involve fact issues," RCC is entitled to partial summary judgment, as an alternative to its motion for judgment on the pleadings. D.E. 43, at 5-6. But IH is not relying on any extrinsic facts that may be relevant to its affirmative defenses to defeat RCC's motion and the affirmative defenses themselves are, of course, *part of the pleadings.* RCC cites *U.S. Sugar Corp. v. Comm. & Indus. Ins. Co.*, 644 F. Supp. 3d 1057 (S.D. Fla. 2022), but *U.S. Sugar* merely stands for the proposition that a court can grant partial judgment on the pleadings on a pure issue of law despite disputes over extrinsic facts beyond the pleadings. *Id.* at 1064 n.4. That is plainly not the case here and judgment on the pleadings remains the appropriate procedural vehicle.

*Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:18-CV-2651-T-33SPF, 2019 WL 2121095, at *1 (M.D. Fla. May 15, 2019).

### B.    Choice of Law

This case involves a dispute over coverage under an environmental liability insurance policy issued by IH's underwriter in Pennsylvania to a Florida insured that covers real property located in, amongst other places, California. *See*, D.E. 23-1, Policy at 11, 136. Under Florida choice of law rules, which apply in this diversity action, where the law of the potentially applicable "jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *James River Ins. Co. v. Med Waste Mgmt., LLC*, 46 F. Supp. 3d 1350, 1355 (S.D. Fla. 2014) (citation omitted). Should this Court find the Policy language to be unambiguous (as it should), then a false conflict is presented here as the law of each of the potentially interested jurisdictions provides that courts must enforce the unambiguous terms of an insurance policy as written. *Rosenberg v. Hudson Ins. Co.*, 638 F. Supp. 3d 510, 516 (W.D. Pa. 2022); *James River Ins. Co. v. Sheehe & Assocs., P.A.*, 716 F. Supp. 3d 1285, 1290 (M.D. Fla. 2024); *Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 354 (Cal. 2003). RCC's belated arguments as to the effect of ambiguity (although none exists), present a different question, which are addressed in further detail, *infra*.

### C.    The Facts Establish that the Testing Was Performed for RCC's Planned Expansion of the CVS

The pleadings unequivocally establish that RCC engaged in environmental testing at the site in preparation for the proposed work on the abandoned dry cleaner store next to CVS as part of building expansion of the CVS store. RCC's own Complaint and the exhibits attached thereto establish that the testing was performed at the request of CVS

*to facilitate CVS's proposed expansion project*. D.E. 1, Compl., ¶¶ 15-17; D.E. 1, Ex. B. Indeed, as RCC itself recognizes in its moving papers, it discovered the contaminants "when, at a tenant's request, it tested the existing adjoining shopping center space that had previously been operated as a dry cleaner to ensure the space was safe for the tenant ***to expand its current store into this adjoining space***." D.E. 43, at 3 (emphasis added). RCC's subsequent position, that the "safety testing" was performed solely "to determine the safety of existing space" for a "tenant who was considering leasing the existent adjacent premises," attempts to ignore this reality. *Id.* at 5, 10-11. For sure, the testing was to ensure safety (as is virtually any environmental testing) but the key and undisputed point here is that it was performed as a site investigation in order to prepare to build out and expand the store (and this fact fits exactly into the Exclusion's language).

**D.    Coverage Is Barred Pursuant to the Plain Language of the Site Development and Construction Activities Exclusion**

As noted above, when the actual facts are considered, the Exclusion plainly applies to bar coverage based on a straightforward reading of its language. It precludes coverage for "*any* **Claim** . . . directly or indirectly based upon or arising out of . . . *any* site development or construction activities, including but not limited to . . . geotechnical or *any* other site investigations performed in preparation for *any* site development or construction[.]" D.E. 23-1, Policy, Section IV. as amended by Endorsement 36, at 38, 254.[4] The Exclusion is drafted using broad language to encompass the entire construction and

---

[4] As explained previously, the Exclusion applies to any **Pollutants** described in the documents referenced in Endorsement 32 of the Policy. Here, the **Pollutants** discovered in the course of the testing work—PERC/PCE and TCE—were identified as existing at Blossom Valley in the Site-specific documents listed on the Disclosed Document Schedule of Endorsement 32. *See* D.E. 23-1, Policy, Endorsement 32, at 136; D.E. 23-3, at 7; D.E. 24, at 59, 109.

80275166;1

development process, using the expansive term "any" four separate times. *Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. 4th DCA 2003) ("any" means "one or another without restriction or exception"). Put simply, RCC's claim arises out of 1) *any* site development, or 2) *any* construction activities or 3) *any* site investigations performed in preparation for *any* site development or construction. It is thus excluded from coverage under the Policy.

As established above (despite RCC's efforts at obfuscation), RCC's testing was performed because CVS and RCC intended to expand the CVS store.  RCC pled that the CVS store and the drycleaning space were separate, adjacent units. D.E. 1, Compl., ¶¶ 15-17; D.E. 1, Ex. B. Common sense dictates that the scope of the proposed expansion would have entailed basic demolition and construction work of the sort plainly required to alter, improve and conjoin two separate, adjacent spaces previously utilized by different companies for different purposes (tearing down the demising wall between the stores and making ceilings, floorings, electrical lighting and painting consistent, installing new equipment, etc.). Those activities plainly constitute "site development," "construction activities," or "construction" as those terms are understood in their common meaning.

First, the Exclusion bars coverage because RCC's planned expansion constituted "site development." As implied by its plain and ordinary language, this term includes actions, including preparatory testing or environmental mitigation, that facilitate the expansion or growth of a particular site. Here, the sampling work was performed as part of the larger process of "development" of the Blossom Valley CVS by growing and expanding the CVS into a vacant, abandoned store space. Courts agree with this interpretation, holding that soil testing and sampling to identify and mitigate environmental concerns are part of the "site development" process. *See DIV Sumner St., LLC v. Great*

10

*Am. E&S Ins. Co.*, No. SUCV201901498BLS1, 2020 WL 2197899 at *4 (Mass. Super. Feb. 7, 2020) (finding sampling and remediation work to constitute site development); *see also* Va. Code Ann. § 2.2-2760 ("Site development activities include clearing, grading, improving drainage, constructing pads, ***mitigating environmental concerns***, providing road or rail access to the site, securing rights-of-way and easements, extending utilities to the site, and undertaking other similar activities.") (emphasis added). *See also* D.E. 29, at 20-21.

Second, RCC's planned project falls under the term "construction activities." In interpreting the meaning of these two words of common and everyday usage, courts have construed "construction activities" to broadly include work that is incidental to the physical acts of building, extending, or altering a structure. *See, e.g.*, *Armenteros v. Baptist Hosp. of Miami, Inc.*, 714 So. 2d 518, 520 (Fla. 3d DCA 1998) (finding expansion to have been in the course of construction activities); *State ex rel. Lamp. v. J.A. Croson Co.*, 661 N.E.2d 724, 727 (Ohio 1996) (interpreting statute which defined "construction activities" as "'demolition, dismantling, excavation, construction, [and] erection of buildings and other structures and the installation of machinery or equipment,' or any activity that is performed 'in connection therewith.'"); Fla. Stat. Ann. § 255.072 (defining "construction services" as "all labor, services, and materials provided in connection with the construction, alteration, repair, demolition, reconstruction, or any other improvements to real property."). Because the soil sampling work was performed in anticipation of the planned CVS expansion, which as explained above would have required demolition, alteration and improvements to the former dry-cleaning site, RCC's claim therefore also arises out of the term "construction activities." *See also* D.E. 29, at 18-20.

11

80275166;1

Finally and forcefully, the soil testing and sampling work also constitutes a "site investigation" in preparation for "site development" or "construction" that is explicitly excluded by the Exclusion. Again, RCC conducted the sampling work that initiated this claim to investigate the suitability of the dry-cleaning space to facilitate CVS's proposed expansion project. That expansion necessarily would have involved site development or construction as the necessary scope of work to complete the expansion would have involved basic construction work such as tearing down the demising wall between the stores and making ceilings, floorings, electrical lighting and painting consistent. *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 28 (2006) (explaining that "construction" means "substantial improvements or modifications to an existing structure[.]"); 35 Pa. Stat. Ann. § 755.3 (defining construction to mean, in relevant part, "the . . . expansion, remodeling, alteration, modernization, or extension of existing structures"). *See also* D.E. 29, at 15-18.

### E.    RCC's New Interpretation Is Illogical and Would Lead to Absurd Consequences

Confronted with the broad and unambiguous language of the Exclusion, RCC now hinges its entire interpretation on one word: "site." Specifically, in its moving papers, RCC now argues (jettisoning its prior theories) that the word "site" constitutes a "prefatory term" that modifies "each subsequent term in the phrase 'site development or construction activities.'" D.E. 43, at 9. Under RCC's reading, then, the phrase must be construed as "site development or **[site]** construction activities." Under that interpretation, RCC somehow insists that the word "site" implicitly then limits the reach of the Exclusion to "activities that involve improving the land or soil in anticipation of vertical construction,

12

such as grading, foundation work, sewer connections, and the like." *Id.* Respectfully, RCC's argument makes no sense and is contrary to law.

RCC commences by leaning on the so-called "series qualifier canon." Not surprisingly, however, this principle is trumped where a common-sense reading produces a contrary result. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 411 (2021) (Alito, J., concurring); Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 150 (2012) ("Perhaps more than most of the other canons, this one is highly sensitive to context."). For example, one would not read the phrase "peanut butter and jelly" as "peanut butter" and "peanut jelly" nor would one read an offer for "hot breakfast or orange juice" as an offer for "hot breakfast" or "hot orange juice." Here, too, there is already a clear parallel structure to the phrase that renders the insertion of the word "site" unnecessary and strained: two attributive nouns ("site" and "construction") modify two broader nouns ("development" and "activities") separated by the disjunctive word "or." This structure makes clear that "site development" and "construction activities" are separate concepts.

Moreover, application of the series-qualifier canon here conflicts with the more fundamental principle that courts cannot rewrite or insert words in an insurance policy under the guise of interpretation. *State Farm Fire & Cas. Ins. Co. v. Wilson*, 330 So. 3d 67, 72 (Fla. 2nd DCA 2021) ("We are not empowered to rewrite an insurance policy to relieve one party from the apparent hardship of an improvident bargain[.]"); *James River Ins. Co. v. Sheehe & Assocs., P.A.*, 716 F. Supp. 3d 1285, 1290 (M.D. Fla. 2024) (explaining that courts must review "the plain language of the insurance policy *as bargained for by the parties*.") (emphasis added). RCC seeks to insert the word "site" in

13

80275166;1

front of "construction activities", but that is not how the Policy was drafted and not the bargain that RCC struck.[5]

Even were the Court to accept RCC's insertion of the word "site" before the word "construction," RCC's preferred construction is a distinction without a difference. The facts here demonstrate construction or *site* construction. RCC appears to argue that the word "site" before "construction" and "development" must mean that the terms apply only to new construction and undeveloped lands where RCC would be "improving land or soil in anticipation of vertical construction." RCC is wrong. First and most obviously, the Policy itself does not include this made up from whole cloth additional limitation (and, as noted above, neither the parties nor the Court can add language to a policy by law). Second and more generally, RCC's construction makes no logical sense where, as here, the Exclusion unequivocally applies to hundreds of already built-out commercial sites. In this regard, the Exclusion applies only to **Pollutants** referenced in the Disclosed Document Schedule of Endorsement 32, which lists nearly one thousand *actively-operating* and *existing* RCC-owned shopping centers, including Blossom Valley. The Exclusion would make no sense if, as RCC contends, it applied only to new vertical construction because it would then not apply to any of the hundreds of listed sites. In other words, the structure of the Exclusion makes clear that it is intended to apply to construction or development

---

[5] RCC argues for its crabbed result by suggesting that IH could have used a comma to separate "site development" from "construction activities." D.E. 43, at 10. But this phrasing—which would appear as "site development, or construction activities"—does not make grammatical sense. The use of "or" already clarifies that the terms "site development" and "construction activities" are separate and distinct actions, making RCC's suggested comma incorrect and the modification of "construction" to "site construction" also incorrect.

14

at these hundreds of *existing* shopping centers. IH's reading of the Policy makes sense; RCC's does not.[6]

RCC next insists that its interpretation of "site" as a limiting pre-positive modifier is confirmed by the list of enumerated actions subject to the Exclusion: (1) geotechnical or any other site investigations performed in preparation for any site development or construction; (2) site grading; (3) razing and/or construction of any structures; (4) removal and/or disposal of any soil or other debris; or (5) dewatering. D.E. 23-1, Policy, Section IV. as amended by Endorsement 36, at 254. According to RCC, these examples "inform the meaning of the preceding phrase 'site construction or construction activity,' as pertaining to the *site,* i.e., the land or soil, as opposed to all construction activities generally." D.E. 43, at 11. RCC is wrong for at least two reasons. First, the broad language of the Exclusion itself makes very clear that it is intended to apply to "*any* site development or construction activities, ***including but not limited to***" the specifically enumerated examples. Limiting the exclusion to the five specific examples is exactly what the language of the Policy does not permit the reader to do. Equally important, the very first example of the five non-limiting examples *is exactly* what happened here: a "site investigation performed in preparation for any site development or construction." Frankly, it is difficult for IH to understand how RCC can claim otherwise and IH submits that the Court should not blink away the reality of the facts and Policy language here.

---

[6] RCC's reading eviscerates the Exclusion by suggesting application to a thin sliver of activities in anticipation of "vertical" construction of structures and buildings at undeveloped land. This result would impermissibly conflict with the principles that insurance policies must be construed as a whole to reveal their broader context and meaning and may not be contorted so as to produce an absurd result. *Travelers Indem. Co. v. Milgen Dev., Inc.*, 297 So. 2d 845, 847 (Fla. 3rd DCA 1974).

15

Finally, RCC claims that its proffered interpretation "is correct as to do otherwise would result in the words 'site development' having no meaning or effect." D.E. 43, at 10. RCC is incorrect. "Site development" is not a subset of "construction activities." Whereas construction activities could involve tasks necessary to construction (such as alterations to the building, tearing down walls, running electricity, putting in floors, etc.), site development may include any tasks that further "develop" or improve the "site" (such as upgrading buildings, expanding facilities, installing signage in a parking lots, or planting trees). All words in a policy of insurance should be read to give them all effect. *State Farm Fire & Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir. 2004). The most logical— and legally acceptable—way to address this issue is to simply read the words as they were written and to give them their natural and ordinary meaning—that is, to interpret "site development" as something different or in addition to "construction activities." Freed from grammatical machinations and properly read in this manner, the two terms "construction activities" and "site development" properly cover the waterfront of what the broadly worded Exclusion was designed to exclude all along: remediation expenses for certain specified chemical contaminants arising out of any construction or any development work by the Insured.

## F.    RCC is Not Entitled to Judgment By Manufacturing Ambiguity

RCC next argues, having done so only in passing in its opposition to IH's motion, that it is entitled to judgment because the Policy is ambiguous and must be construed in its favor. As an initial matter, IH emphasizes that the Exclusion here is plain and unambiguous for all the reasons discussed above. *See Sheehe & Assocs., P.A.,* 716 F. Supp. 3d at 1290, 1293 (citations omitted) (finding no ambiguity where insured argued

16

exclusion was "fatally ambiguous" due to the plain import of the policy language). RCC's attempt to conjure ambiguity where none exists falls flat because its proffered interpretation is inconsistent with the Policy's actual language, and is unreasonable and illogical. *Those Certain Underwriters at Lloyd's Subscribing to Pol'y No. 25693JB v. Capri of Palm Beach, Inc.*, 932 F. Supp. 1444, 1447 (S.D. Fla. 1996) ("Courts may not rewrite contracts or add meaning in order to create an ambiguity where none exists."); *New Hampshire Indem. Co. v. Scott*, 910 F. Supp. 2d 1341, 1344 (M.D. Fla. 2012).

Nevertheless, if this Court does credit RCC's interpretation as reasonable (and it is not), judgment in RCC's favor would still be inappropriate. This case falls squarely within Florida's exception to *contra preferentem* where (as here) the insured is sophisticated and represented by an experienced insurance broker as well as outside counsel in negotiating the terms and conditions of the Policy.[7] *RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F. Supp. 2d 1258, 1266 n.6 (S.D. Fla. 2008) (explaining that where a "sophisticated insured had at least equal input into the drafting of the policy generally, and of the specific clause at issue, application of the doctrine of *contra preferentem* is doubtful."); *see also Lloyds of London v. Pero Fam. Farm Co.*, No. 18-CV-81680, 2020 WL 3268274, at *4 n.3 (S.D. Fla. Apr. 9, 2020); D.E. 1, Compl. Ex. D, 9-20-2023 Letter, at 3 (discussing applicability of exception to different exclusion referred to by

---

[7] Although outside of the pleadings and thus beyond the scope of this motion, RCC appears to claim that Indian Harbor has conceded that *contra preferentem* must be applied without further analysis in the event of ambiguity. D.E. 43, at 13. RCC, however, misleadingly cited to the hearing transcript out of context. IH's counsel clearly explained (1) the doctrine does not apply to sophisticated insureds and (2) the result would be different under Pennsylvania or California law. D.E. 41, MTC Hearing Tr., at 43:9-44:20. RCC's argument is inaccurate, irrelevant and in any event, is not information properly considered on a MJOP.

17

RCC's outside counsel, Gerald Pouncey). Additionally, as this Court is limited to the pleadings in deciding this motion, this issue is not even properly before the Court as RCC never pled in its complaint that the Policy language was ambiguous.[8]

Finally, while IH maintains that no choice of law analysis is necessary because the Policy language unambiguously applies to bar coverage under any relevant law, were the Court to find the language ambiguous, the Court should apply either Pennsylvania law (under the *lex loci contractus* rule) or California law (under the Second Restatement approach) to adjudicate the ambiguity. *CNL Hotels & Resorts, Inc. v. Houston Cas. Co.*, 505 F. Supp. 2d 1317, 1321 (M.D. Fla. 2007) (applying *lex loci contractus* and concluding that New York law applied to policy issued from New York and mailed to insured in Florida); *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1120 (11th Cir. 1990) (when confronted with a policy involving real property located in different jurisdictions, court should apply the substantive law of the location of the particular insured property at issue.). Here, the Policy was issued to RCC from Pennsylvania and the site at issue is in California. Neither state construes language against an insurer without first resorting to examination of extrinsic evidence. *Rainier Credit Co. v. W. All. Corp.*, 171 Cal. App. 3d 255, 263-64 (Cal. App. 1985); *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 980 F. Supp. 796, 801 (E.D. Pa. 1997). Thus, under Pennsylvania or California law, RCC is not entitled to judgment as *contra preferentem* cannot be applied on this limited record.

---

[8] In the motion to compel hearing, Judge Barksdale strongly intimated that failure was dispositive. Judge Barksdale explained to RCC's counsel that, for the issue to be live, RCC was required to have pleaded ambiguity in its Complaint. D.E. 41, MTC Hearing Tr., at 16:5-21. Because "the deadline passed to amend the pleadings" Judge Barksdale concluded RCC was "stuck with your pleading as it stands." *Id.* at 18:3-6, 29:8-20.

80275166;1

**G.    RCC is Not Entitled to Partial Summary Judgment on IH's Affirmative Defenses**

Finally, RCC asserts that it is entitled to partial judgment on IH's 1st, 2nd, 3rd, 8th, 9th, 10th, 15th, 16th, and 17th Affirmative Defenses. In doing so, RCC ventures outside the pleadings to selectively quote from the motion to compel hearing, in which this Court also expressly requested that counsel not file a motion to strike affirmative defenses as doing so would be wasteful. D.E. 41, MTC Hearing Tr., at 59:11-20 ("But as a result, motions to strike affirmative defenses can be real time-wasters, especially if there's a motion for judgment on the pleadings pending that doesn't have anything to do with the affirmative defenses. Got that, Mr. Tucker?").

In any event, RCC is wrong to argue that IH must provide specific evidentiary support for each defense to avoid judgment for RCC. That is not the standard. Rather, affirmative defenses need only "meet the general pleading requirements of Rule 8(a) of the [FRCP], which require 'a short and plain statement' of the defense." *McGlothan v. Walmart Stores, Inc.*, No. 6:06-CV-94-ORL-28JGG, 2006 WL 1679592, at *1 (M.D. Fla. June 14, 2006). IH sufficiently pled its defenses, each of which provides fair notice to RCC of the potential additional defenses that IH may assert depending on evidence obtained during discovery, which IH has not pursued due to the pendency of the motion for judgment on the pleadings, but which IH will supplement as appropriate. *Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:18-CV-2651-T-33SPF, 2019 WL 2121095, at *2 (M.D. Fla. May 15, 2019) (affirmative defenses need only provide "fair notice of the nature of [the] defenses and the issues [defendant] intends to raise as the case proceeds.").

19

80275166;1

## III.    CONCLUSION

IH respectfully requests that this Court deny RCC's Motion for Judgment on the Pleadings and grant IH's Cross Motion for Judgment on the Pleadings.

Respectfully submitted,

**AKERMAN LLP**
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095

By: s/ Antonio D. Morin
    Antonio D. Morin
    Florida Bar No. 187860
    Primary e-mail: antonio.morin@akerman.com

**TROUTMAN PEPPER LOCKE LLP**
Richard J. Pratt, Esq. (pro hac vice)
401 Ninth St., NW, Suite 1000
Washington, D.C. 20004
Email: richard.pratt@troutman.com
Daniel W. Cohen, Esq. (pro hac vice)
875 Third Avenue
New York, NY 10022
Email: dan.cohen@troutman.com

*Attorneys for Defendant, Indian Harbor
  Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court this 3rd day of March, 2025 by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Antonio D. Morin
Attorney

20

80275166;1