UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| REGENCY CENTERS CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>INDIAN HARBOR INSURANCE COMPANY, )<br><br>Defendant. ) | Civil Action<br>No. 24-00428-WGY-PDB |

YOUNG, D.J.[1]                                    **May 6, 2026**

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Regency Centers Corporation ("Regency") brings this action against Indian Harbor Insurance Company ("Indian Harbor") for breach of an insurance agreement.  Compl. ¶ 49, ECF No. 1. Regency alleges that Indian Harbor wrongfully denied it coverage under the insurance policy by relying on an incorrect interpretation and application of the language in the applicable insurance policy exclusion.  Id. ¶ 41.

Regency brings two counts: (1) declaratory relief pursuant to 28 U.S.C §§ 2201 and 2202, and (2) breach of contract.  Id. ¶¶ 38-46, 47-50.

Indian Harbor moved for judgment on the pleadings on both counts arguing that "[c]overage is barred pursuant to the site

---

[1] Of the District of Massachusetts, sitting by designation.

development and construction activities exclusion" in the insurance policy. Def.'s Mot. J. Pleadings ("Def.'s Mem.") 13, ECF No. 29. Regency filed a cross-motion for judgment on the pleadings or alternatively, partial summary judgment, stating that the language in the insurance policy and policy exclusion was agreed-upon by the parties, and what is at issue is the interpretation of said language. Pl.'s Mot. Partial J. Pleadings Alt. Partial Summ. J. ("Pl.'s Mem.") 1, ECF No. 43.

This Court **ALLOWS** Indian Harbor's motion for judgment on the pleadings on both counts because Indian Harbor has not breached the insurance policy agreement by denying coverage in accordance with the policy exclusion. Consequently, Regency's cross-motion for judgment on the pleadings or alternatively, partial summary judgment is wholly **DENIED**.

## II.  PROCEDURAL HISTORY

Regency filed suit against Indian Harbor on May 1, 2024. Compl., ECF No. 1. Regency brings two counts: declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, id. ¶¶ 38-46 (count I), and breach of contract, id. ¶¶ 47-50 (count II).

Indian Harbor moved for judgment on the pleadings on both counts. See Def.'s Mem. The parties have fully briefed this motion. Pl.'s Resp. Opp'n Def.'s Mot. J. Pleadings ("Pl.'s Opp'n"), ECF No. 34; Def.'s Reply Supp. Mot. J. Pleadings ("Def.'s Reply"), ECF No. 68. Regency filed a cross-motion for

judgment on the pleadings or, alternatively, for partial summary judgment.  See Pl.'s Mem.  This motion has also been fully briefed.  Def.'s Opp'n Pl.'s Mot. J. Pleadings Alt. Partial Summ. J. ("Def.'s Opp'n"), ECF No. 51; Pl.'s Reply Supp. Mot. Partial J. Pleadings Alt. Partial Summ. J. ("Pl.'s Reply"), ECF No. 67.  At a motion hearing on February 19, 2026, the Court inquired whether the parties wished to treat this action as a case stated.  See Minute Entry, ECF No. 93.  The parties proceeded with oral argument instead, and the Court took the matter under advisement.  Id.

This Court has subject-matter jurisdiction over the claims arising under diversity pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  See Compl. ¶ 50. The remaining state law claims are appropriate to adjudicate at the same time under supplemental jurisdiction arising under 28 U.S.C. § 1367.

## III. **FACTS ALLEGED**

Regency purchased an insurance policy (the Environmental Real Estate Portfolio Policy, Pollution and Remediation Liability Policy ("the Policy" or "Policy")) from Indian Harbor, effective from October 1, 2021, and expiring on October 1, 2024. Compl. ¶¶ 1-3, 8.  The Policy insured against pollution loss in

[3]

several real estate properties owned by Regency.  See Policy, ECF No. 1-3.

Regency submitted a claim to Indian Harbor around December 28, 2022, regarding the discovery of a pollutant in one of its insured locations -- the Blossom Valley Shopping Center in California, that could entitle it to coverage under the Policy. Compl. ¶ 13.  Indian Harbor responded around May 15, 2023, denying coverage based on the exclusion to the Policy ("the Policy Exclusion" or "the Exclusion") and two of the modifying endorsements to the Exclusion, Endorsements #032 and #036.  Id. ¶¶ 18, 20.  Indian Harbor found that Regency had discovered the pollutants during a site investigation in preparation for site development or construction activities, which was explicitly excluded under Endorsement #036.  See ECF No. 1-5 at 4.  Indian Harbor additionally justified its denial of coverage, stating that Endorsement #032 excluded the pollutants found at the Blossom Valley location.  Def.'s Mem. 5.

Regency argues that it is entitled to coverage firstly because it conducted the site investigation to test for the safety of a vacant space in the shopping center per the request of one of its tenants who was looking to expand into that space, rather than "for purposes of any construction or site development activity," as excluded from coverage under the policy.  Compl. ¶ 42.  Regency's second argument for coverage is

[4]

that the Blossom Valley Shopping Center was not listed under Endorsement #033 to the Policy, which lists locations excluded from coverage pursuant to the Policy Exclusion terms. Id. ¶¶ 28-30. Indian Harbor stands by its denial of coverage for the reasons stated above.

Regency seeks an award of damages against Indian Harbor for breach of contract, and declaratory judgment declaring that the relevant endorsements, and any other Policy provisions, do not exclude coverage of the claim. Id. at 15, 17.

## IV.  ANALYSIS

### A.  Pleading Standard

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." Guarino v. Wyeth LLC, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citing Hawthorne, 140 F.3d at 1370). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Nor can a

complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Twombly, 550 U.S. at 557). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

Under Federal Rule of Civil Procedure 12(c), "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001); see also Perez, 774 F.3d at 1335; Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005); Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1291 (11th Cir. 2002). "'A motion for judgment on the pleadings admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts.'" Gachette v. Axis Surplus Ins. Co., No. 19-cv-23680, 2020 WL 2850587, at *1 (S.D. Fla. Apr. 1, 2020) (quoting Dozier v. Professional Found. for Health Care, Inc., 944 F.2d 814, n.3 816 (11th Cir. 1991)).

If, however, "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." King v. Akima Glob. Servs., LLC, 775 F. App'x

[6]

617, 620 (11th Cir. 2019) (citing <u>Horsley</u> v. <u>Rivera</u>, 292 F.3d 695, 700 (11th Cir. 2002)).

In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. <u>Cunningham</u> v. <u>District Attorney's Office for Escambia Cnty.</u>, 592 F.3d 1237, 1255 (11th Cir. 2010). "A court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute." <u>Eisenberg</u> v. <u>City of Miami Beach</u>, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (citing <u>Day</u> v. <u>Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005)). "In particular, the Court may 'take judicial notice of and consider documents which are public records.'" <u>Id.</u> (citing <u>Day</u>, 400 F.3d at 1275-76).

## B. Choice of Law

As a preliminary issue, the parties discuss choice of law issues within the briefs to a significant extent.[2] The parties agree that Florida law applies to the dispute. Def.'s Mem. 11; Pl.'s Opp'n 6 n.3. Indian Harbor adds that Pennsylvania law may apply as well, and also argues separately that this Court should

---

[2] The parties initially had a choice of law clause in the insurance policy designating New York law as the governing law, but later deleted that clause in its entirety. Def.'s Ex. A. 47, 64.

apply California law under the Second Restatement approach to adjudicate any ambiguity this Court finds in the Policy.  Def.'s Mem. 11; Def.'s Opp'n 18.

Starting with the argument for the application of Pennsylvania law, this Court need not resolve the choice of law question where there a 'false conflict,' i.e., where "the potentially applicable laws do not differ," or "when the laws of the competing states are substantially similar[.]"  Fioretti v. Massachusetts Gen. Life Ins. Co., 53 F.3d 1228, 1234, n.20 (11th Cir. 1995).  See also In re Jan. 2021 Short Squeeze Trading Litig., 76 F.4th 1335, 1346 (11th Cir. 2023) ("a court need not resolve a choice-of-law dispute if there is a 'false conflict,' such that the different laws point to the same outcome under the facts of the case.").  Instead, this Court must "simply decide the issue under the law of each of the interested states[,]" or "[a]lternatively, . . . **apply the law of the forum state**." Fioretti, 53 F.3d at 1234, n.21 (emphasis added).  Indian Harbor concedes that "the decisional law of both [Pennsylvania and Florida] on the issues presented by this motion is identical." Def.'s Mem. 11.  Thus, this Court applies the law of the forum state, Florida, for the reasons below.

Under the Klaxon doctrine, the choice of law rules to be applied by federal courts sitting in diversity must conform to those of the forum state.  See Klaxon Co. v. Stentor Elec. Mfg.

[8]

Co., 313 U.S. 487, 496 (1941).  As this Court sits in diversity, it must apply Florida choice of law rules.  The Eleventh Circuit in an insurance case held that "under Florida choice-of-law rules, lex loci contractus applies in contract matters."  Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1091 (11th Cir. 2004).  Lex loci contractus consequently applies to the insurance policy because "[u]nder Florida law, an insurance policy is a contract, and ordinary contract principles govern its interpretation and construction."  State Farm Mut. Auto. Ins. Co. v. Spangler, 64 F.4th 1173, 1178 (11th Cir. 2023).  Lex loci contractus refers to the law of the jurisdiction where the contract was executed.  Prime Ins. Syndicate, Inc., 363 F.3d at 1092 (citing Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 (Fla. 1988)).  The Eleventh Circuit clarified that where a contract is executed "requires a determination of where the last act necessary to complete the contract was done, [. . .] [which] is the offeree's communication of acceptance to the offeror."  Id. at 1093 (quotations and citations omitted).  Here, Regency received and accepted the Policy in Florida, thus Florida law should ordinarily apply.  Pl.'s Opp'n 6 n.3.

Regarding the application of California law, Indian Harbor references the Shapiro case, where the Eleventh Circuit held that even though Florida courts have traditionally applied lex

[9]

loci contractus to "questions regarding the interpretation and validity of a contract," that application does not extend to insurance contracts involving real property, where the Second Restatement significant relationship test instead applies. Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1119 (11th Cir. 1990). Since Shapiro, however, the Florida Supreme Court has clarified the position of Florida law on this issue, holding in Roach that it has "never retreated from [its] adherence to [the lex loci contractus] rule in determining which state's law applies in interpreting contracts." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1164 (Fla. 2006). See also National Union Fire Ins. Co. of Pittsburgh, PA v. Beta Const. LLC, 816 F. Supp. 2d 1256, 1260 (M.D. Fla. 2011) ("Florida unequivocally follows the rule of lex loci contractus in deciding which state law to apply to interpret insurance contracts."); Pierce v. Property & Cas. Ins. Co. of Hartford, 303 F. Supp. 3d 1302, 1304 (M.D. Fla. 2017) (suggesting that lex loci contractus applies to insurance contracts involving real property because "the Florida Supreme Court's discussion of the lex loci contractus rule [in Roach] was broad . . ."). Thus, this Court adheres to Florida choice of law rules on the interpretation of insurance contracts and applies Florida law under lex loci contractus.

[10]

## C.    Barred Coverage

Indian Harbor argues that the Policy Exclusion bars coverage for Regency because both Policy Exclusion requirements have been met: (1) Regency's claim arises out of any site development or construction activities, and (2) Tetrachloroethene ("PERC")/PCE and TCE (the pollutants Regency seeks coverage in connection to) are pollutants described in the Policy Exclusion.    Both arguments are substantiated by the record.    Importantly, as the entirety of this discussion will turn on contract interpretation, none of the stipulations presented by the parties will be regarded as factual questions but rather questions of law.    This is because "[u]nder Florida law, interpretation of an insurance contract, including determination and resolution of ambiguity, is a matter of law." Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993).    See also MONY Life Ins. Co. v. Perez, 146 F.4th 1018, 1029 (11th Cir. 2025) ("[u]nder Florida law, it is neither the parties' nor the jury's role to interpret ambiguous contract provisions found in an insurance policy, but rather the court's." (citation omitted)).

### 1.    Regency's Investigatory Work Was Properly Excluded From Coverage

Indian Harbor argues that Regency's request for coverage under the Policy was appropriately denied per the Policy

[11]

Exclusion because it arises out of the site development and construction activities performed at the shopping center. Indian Harbor supports this argument with the following: (1) the language in the Policy Exclusion "is broad and should be interpreted according to its terms"; (2) "Regency's investigatory work for the CVS expansion constitutes a 'site investigation performed in preparation for any site development or construction'"; (3) Regency's work constituted excluded "construction activities"; and (4) alternatively, Regency's work constituted "site development." Defs.' Mem. 14-20.

### i.    Policy Exclusion Language

Indian Harbor argues that the language in the Policy Exclusion "is broad and should be interpreted according to its terms". Def.'s Mem. 14. While insurance policy exclusions are interpreted narrowly as a whole and in favor of the insured, Florida courts have broadly interpreted some terms used in the instant insurance policy exclusion.

The Eleventh Circuit held that under Florida law, "a court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect." Anderson v. Auto-Owners Ins. Co., 172 F.3d 767, 769 (11th Cir. 1999). Distinguishably, "insurance coverage must be [interpreted] broadly and its exclusions narrowly." Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022)

[12]

(quoting Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So. 2d 565, 568 (2nd Fla. DCA 1984)). Particularly, "exclusions [to insurance policy agreements] will be strictly construed against the insurer and in favor of coverage." Quesada v. Director, FEMA, 753 F.2d 1011, 1014 n.4 (11th Cir. 1985) (quotations omitted).

Notably, "[i]n construing insurance-policy terms, Florida courts 'commonly adopt the plain meaning of words contained in legal and non-legal dictionaries.'" Hegel v. First Liberty Ins. Corp., 778 F. 3d 1214, 1221 (11th Cir. 2015) (quoting Brill v. Indianapolis Life Ins. Co., 784 F. 2d 1511, 1513 (11th Cir. 1986)).

The Policy Exclusion applies to "any Claim, Pollution Loss, Emergency Remediation Expense, or any other coverage afforded under this Policy . . . directly or indirectly based upon or arising out of [the terms of the Exclusion]." Def.'s Mem. 14; Def. Ex. A 38, ECF No. 23-1. The Eleventh Circuit noted that "the term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (quoting Taurus Holdings, Inc. v. United States Fid. & Guar. Co., 913 So.2d 528, 539 (Fla. 2005) (quotations omitted)).

[13]

The Merriam-Webster Dictionary defines 'any' as one, some, or all indiscriminately of whatever kind or quantity, and provides the word 'every' as a synonym. Any, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/any (last visited Nov. 7, 2025). Thus, Indian Harbor's argument that "ALL claims having ANY relation or connection to 'site development or construction activities' are excluded from coverage" is the correct interpretation of the terms in the Policy Exclusion per the controlling authority. Def.'s Mem. 14. It should be noted, however, that this interpretation stems from the narrow construction of the terminology used in the Policy Exclusion, and not by means of interpretation in a "broad fashion" to any extent Indian Harbor implies it should be done. Id. The terms themselves simply happen to be broad in their plain meaning.

### ii.  Preparatory site investigation

Indian Harbor argues that the exclusion of "site development and construction activities" includes "any other site investigations performed in preparation for any site development or construction," which Regency engaged in. Def.'s Mem. 15; Def. Ex. A 254. Indian Harbor states that Regency's investigation into the suitability of the vacant space per the request of CVS (which led to the discovery of the pollutants) was an excluded "site investigation performed in preparation for

[14]

any site development or construction" because the investigation was performed against the backdrop of CVS's interest in expanding into the adjacent (previously drycleaning) space in the shopping mall. Def.'s Mem. 15. This is a meritorious argument.

The Eleventh Circuit holds that "when a policy term is undefined, 'common everyday usage determines its meaning.'" State Farm Mut. Auto. Ins. Co. v. Spangler, 64 F.4th 1173, 1179 (11th Cir. 2023) (quoting Nateman v. Hartford Cas. Ins. Co., 544 So. 2d 1026, 1028 (Fla. Dist. Ct. App. 1989)). This means looking at the term's 'plain and ordinary meaning' which (as previously stated) can involve legal and non-legal dictionary definitions. Id. The aim is "[to provide] a reasonable, practicable and sensible interpretation consistent with the intent of the parties." Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC, 872 F.3d 1161, 1164 (11th Cir. 2017) (quoting Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 736 (Fla. 2002)). See also Towne Realty, Inc. v. Safeco Ins. Co. of Am., 854 F.2d 1264, 1267 (11th Cir. 1988) ("The intent of the parties to a contract is to be deduced from language employed, and such intention, when expressed, is controlling, regardless of intention existing in the minds of parties.") (quoting Durham Tropical Land Corp. v. Sun Garden Sales Co., 138 So. 21, 23 (1931)).

[15]

Black's Law Dictionary defines 'site' as "a place or location; [especially] a piece of property set aside for a specific use." Site, Black's Law Dictionary (12th ed. 2024). 'Investigate' according to the Merriam-Webster dictionary means "to observe or study by close examination and systematic inquiry." Investigate, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/investigate (last visited Nov. 7, 2025). Black's Law Dictionary also defines 'development' as "a substantial human-created change to improved or unimproved real estate, including the construction of buildings or other structures." Development, Black's Law Dictionary (12th ed. 2024). 'Construction' is defined as "[t]he act of building by combining or arranging parts or elements; the thing so built." Construction, Black's Law Dictionary (12th ed. 2024).

Regency states in its complaint that the "Site Development and Construction Activities Exclusion . . . does not apply because the sampling/testing done by [Regency] was not done for purposes of any construction or site development . . .," and was rather done "to determine the safety of the existing space, making the exclusion inapplicable under a plain reading of the language of [the Policy Exclusion]." Compl. ¶¶ 22, 23. The Merriam-Webster dictionary defines 'preparation' as "the action or process of making something ready for use or service or of

[16]

getting ready for some occasion, test, or duty." Preparation, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/preparation (last visited Nov. 7, 2025).

As iterated earlier, "terms and phrases cannot be viewed in isolation"; "[w]hen construing an insurance policy under Florida law, courts 'read each policy as a whole, endeavoring to give every provision its full meaning and **operative effect.'**" Hegel, 778 F.3d at 1221 (quotations omitted) (emphasis added); Travelers Prop. Cas. Co. of Am. v. Talcon Grp. LLC, 88 F.4th 1371, 1376 (11th Cir. 2023) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 166 (Fla. 2003)). The operative effect of the Policy Exclusion denies coverage to any examination of a piece of property set aside for a specific use (here, the vacant store space in Blossom Valley which CVS wanted to expand into) in the process of making that piece of property ready for the construction of structures or combining or arranging parts or elements. Here, the undisputed facts fall within the exclusion because the investigation was to ensure that CVS could expand its operations into the adjacent store, which would have required an activity, action, or alteration to the vacant space. Indeed, Indian Harbor is correct that Regency cannot "divorce one alleged underlying purpose of the testing [confirming the safety of the vacant space] from [the] ultimate purpose (to enable CVS to complete its expansion project)"

[17]

because "the two goals are not mutually exclusive."  Def.'s Reply 3.

Indian Harbor further argues that Regency's position that the Policy Exclusion was inapplicable because CVS did not go through with the expansion project fails because the language of the Policy Exclusion does not require that any site development or construction activity be completed.  Def.'s Mem. 17.  The Court agrees.  The Exclusion only refers to site investigations **in preparation for** site development and construction activities and does not mention the **initiation** -- let alone completion -- of any site development or construction activity.  Indian Harbor also is correct that it is irrelevant to the purpose of the investigation that a governmental agency requires Regency to investigate further per its statutory obligation (since its initial investigation resulted in the discovery of pollutants), as Regency argues.  Def.'s Mem. 18.  Therefore, the sampling and testing done by Regency was in preparation for site development or construction activity as matter of law, and coverage was appropriately denied.

Reaching this conclusion, the Court need not address Indian Harbor's alternative arguments that Regency's work constituted 'construction activities' or 'site development' under the Exclusion.

[18]

### iii. Ambiguity

Regency argues that, at the very least, the Policy Exclusion is ambiguous and thus creates issues of fact and the right to complete discovery. Pl.'s Opp'n 14. Indian Harbor's rebuttal that the Policy Exclusion is 'plain and unambiguous' prevails. Def.'s Reply 6.

"Florida courts start with 'the plain language of the policy, as bargained for by the parties' [and] if that language is unambiguous, it governs." State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) (quotations omitted). See also Admiral Ins. Co. v. Feit Mgmt. Co., 321 F.3d 1326, 1329 (11th Cir. 2003) (holding that a pollution exclusion clause "must be given its plain meaning unless there is some genuine ambiguity in the exception's meaning.").

The Eleventh Circuit emphasized that genuine ambiguity is not established merely because "an insurance provision is complex or requires analysis. . .". Southern-Owners Ins. Co., 872 F.3d at 1164 (quotations omitted). See also Zucker for BankUnited Fin. Corp. v. United States Specialty Ins. Co., 856 F.3d 1343, 1348 (11th Cir. 2017) ("While insurance policies may be confusing to persons not trained or experienced in the form and language of insurance policies . . . that fact does not make such policies or language legally ambiguous.') (quotations omitted); Travelers Indem. Co. of Connecticut v. Richard

[19]

Mckenzie & Sons, Inc., 10 F.4th 1255, 1264 (11th Cir. 2021) ("a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.") (quotations omitted); Penzer, 545 F.3d at 1306 (also excluding undefined terms as an automatic indicator of ambiguity); Orkin Exterminating Co. v. F.T.C., 849 F.2d 1354, 1360 (11th Cir. 1988) ("'[a]n ambiguity in a contract cannot be created by the mere assertion of a party to it.' The fact that the meaning of a contract term is disputed likewise reveals no ambiguity.") (quoting Vreeland v. Federal Power Comm'n, 528 F.2d 1343, 1351 (5th Cir. 1976)).

Additionally, "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (quoting Taurus Holdings, Inc. v. United States Fidelity and Guar. Co., 913 So.2d 528, 532 (Fla. 2005)). See also Sphinx Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1228 (11th Cir. 2005) ("[C]ourts should not strain to find ambiguity."); Hashwani v. Barbar, 822 F.2d 1038, 1040 (11th Cir. 1987) ("[T]he plain language must control where there is no ambiguity, and this Court will not rewrite the agreement to make it more favorable. . .").

[20]

As can be observed from the above discussions, the terms of the Exclusion were "taken and understood in their ordinary sense" and interpreted according to their "plain and ordinary meaning," Westchester Gen. Hosp., Inc., 48 F.4th at 1303, revealing that Regency's interpretation of the Policy Exclusion language does not create a genuine ambiguity, even though it required some analysis to reach that conclusion.

Regency further argues that it is "entitled to [its] requested discovery to [. . .] to determine if [said] discovery establishes a latent ambiguity." Pl.'s Mem. 14 n.7. The Eleventh Circuit held that "[a] latent ambiguity exists where a document is rendered ambiguous by some collateral matter. Under such circumstances the trial court is obligated to consider parol evidence to determine whether the contract is ambiguous." Hashwani, 822 F.2d at 1040. See also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1310 (11th Cir. 1998) ("A latent ambiguity . . . exist[s] where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.") (quoting Crown Management Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984)); MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 844 (11th Cir. 2013).

[21]

The latent ambiguity doctrine thus does not apply where "the parties' rights and obligations are clearly stated in the ... agreement, and there is no ambiguity that would warrant the introduction of parol evidence." Orkin Exterminating Co., 849 F.2d at 1362) (quoting Hashwani, 822 F.2d at 1040). See also Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 405 (11th Cir. 1989) (holding that "the district court did not err in refusing to admit extrinsic evidence [. . .] to resolve the legal question as to whether a latent ambiguity exists," because the disputed term was "clear and unambiguous.").

Here, there is no reasonable divergent interpretation of the Policy Exclusion terms provided by Regency to justify a search for extrinsic evidence to establish the existence of some potential collateral matter which could make the Court's understanding of the Exclusion language uncertain. Thus, the latent ambiguity doctrine does not apply, and the disputed exclusionary phrases remain unambiguous.

### 2.    The Pollutants

Indian Harbor argues that the second part of the Policy Exclusion requirements has been met because PERC/PCE and TCE are excluded under the Policy. Def.'s Mem. 22. This is correct.

The Exclusion states:

> This exclusion applies to any Pollutants, including any breakdown daughter or derivative products of such Pollutants, described in the documents listed in the

[22]

> Known Circumstances or Conditions Exclusion Amendment &
> Disclosed Document Schedule endorsed onto this Policy,
> in or affecting all Media where such Pollutants is on,
> at, under or migrating from any location listed in the
> Your Location(s) Schedule endorsed onto this Policy.

Def. Ex. A 254 (emphasis omitted). In the "Known Circumstances or Conditions Exclusion Amendment & Disclosed Document Schedule" found in Endorsement #032, Blossom Valley is included as a location, with three of the five documents listed with it describing the presence of PERC/PCE and TCE. Def.'s Mem. 22; Def. Ex. C 6-7, ECF No. 23-3.

Regency in its complaint argues that Indian Harbor's above argument is wrong because Endorsement #032 "is only to identify all locations with Known Conditions disclosed by [Regency] so that Indian Harbor could consider whether to exclude from coverage." Compl. ¶ 31. Regency argues that whether Blossom Valley and PERC/PCE and TCE are excluded is dependent on the language in Endorsement #033 (which does not mention Blossom Valley on the excluded locations list). Id. ¶ 32. The Court disagrees with this interpretation.

The Policy Exclusion "does not apply to any Claim, Pollution Loss, Emergency Remediation Expense, or any other coverage afforded under this Policy . . . directly or indirectly based upon or arising out of" the following: (1) "a Claim for Pollution Loss or Remediation Expense reported to or known by a Responsible Insured prior to the inception of the Policy

[23]

Period"; (2) a pollution condition known but not reported; or (3) a circumstance or condition known but not reported where Regency "should have reasonably foreseen that a Pollution Condition or a Claim for Pollution Loss would result, or Remediation Expense would be incurred."  Def.'s Ex. A. 38-39.

Regency admits that it disclosed to Indian Harbor "the Blossom Valley Shopping Center and the dry cleaner condition prior to the Policy's inception" in accordance with the Exclusion.  Therefore, per the language of the Exclusion, the pollutants discovered at Blossom Valley are excluded from coverage.  Thus, Regency's argument that the Policy did not separately and explicitly exclude Blossom Valley and the discovered pollutants from coverage is irrelevant.  As far as Regency argues that Blossom Valley was not listed in Endorsement #033 and thus is not excluded, again, "a court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect."  Anderson, 172 F.3d at 769; Hyman, 304 F.3d at 1186; Dahl-Eimers, 986 F.2d at 1381; Travelers Prop. Cas. Co. of Am., 88 F.4th at 1376; Hegel, 778 F.3d at 1221; In re K F Dairies, Inc. & Affiliates, 224 F.3d at 925.  Blossom Valley and the pollutants discovered there were mentioned in Endorsement #032, which also applies to and extends the Policy Exclusion.  Thus, reading the Policy as a whole, and giving Endorsement #032 its full meaning and operative effect,

[24]

the Exclusion applies to the pollutants discovered by Regency at the Blossom Valley location.

## V.    CONCLUSION

For the reasons stated above, Indian Harbor's motion for judgment on the pleadings, ECF No. 29, is **ALLOWED** on both counts: declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (count I); and breach of contract (count II). Consequently, Regency's cross-motion for judgment on the pleadings or alternatively, partial summary judgment, ECF No. 43, is **DENIED**.  The Clerk is directed to enter a separate order of dismissal and close the case.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

_____

[3]  This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[25]